IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| KEVIN ROBINSON, | ) |  |
|---|---|---|
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| v. | ) | Civ. No. 12-1348-SLR |
|  | ) |  |
| DAVID PIERCE, Warden, and | ) |  |
| ATTORNEY GENERAL OF THE | ) |  |
| STATE OF DELAWARE, | ) |  |
|  | ) |  |
| Respondents.[1] | ) |  |

Kevin Robinson. Pro se petitioner.

Karen V. Sullivan. Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

**MEMORANDUM OPINION**

December 17, 2015
Wilmington, Delaware

---

[1] Warden David Pierce replaced former warden Perry Phelps, an original party to this case. *See* Fed. R. Civ. P. 25(d).

ROBINSON, District Judge

## I. INTRODUCTION

Presently before the court is petitioner Kenneth Robinson's ("petitioner") application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 3) Petitioner is incarcerated at the James T. Vaughn Correctional Institution in Smyrna, Delaware. For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As set forth by the Delaware Supreme Court in petitioner's direct appeal, the facts leading to petitioner's arrest and conviction are as follows:

> On the afternoon of July 22, 2006, [petitioner] and co-defendant Timothy Austin ("Austin") drove from Philadelphia to Claymont to meet with the victim Kevin Rafferty ("Rafferty") in the parking lot of the Brookview Apartments. Austin and Rafferty were acquaintances. They had previously arranged the meeting by telephone. Austin was to buy two ounces of marijuana from Rafferty for $500.
>
> Accompanying Rafferty to the rendezvous was Rafferty's friend, William Witts ("Witts"). Rafferty was a self-employed electrician, and Witts worked for him as an assistant. The two lived together in Leedom Estates.
>
> At trial, Witts testified that Rafferty regularly sold marijuana to supplement his income. On the day of the murder, Rafferty woke Witts up at about noon and told him they were going to a party, but first had to make a stop in Claymont. The two then drove to Claymont and parked in the parking lot of the Brookview Apartments. Rafferty first met with someone named Chuck, who left as Austin arrived in a white Chevrolet Lumina. Austin was in the front passenger's seat. Witts had met Austin once before and knew him as "Ghost."
>
> Austin walked over to Rafferty's vehicle, a Range Rover, and got in the back seat, counted out some money and then said his "brother" had more money. Austin walked back to the Lumina and returned with [petitioner], who climbed into the back seat of the Land Rover behind Witts. Austin and Rafferty then walked around to the back of the Land Rover to retrieve the marijuana.
>
> After Rafferty and Austin left, [petitioner] pulled out a pistol, held it to Witts' head and told him not to move. [Petitioner] then took Witts' cell phone and necklace as well as Rafferty's cell phone, which was on the console. Rafferty and Austin then

1

returned and got back in the car, Rafferty in the front and Austin behind him in the rear passenger's seat. Austin grabbed Rafferty from behind and began choking him. The two fell out of the car and continued struggling. Witts remained in the vehicle with [petitioner's] gun pointed at his head.

[Petitioner] then got out of the vehicle, and Witts, who had his head down, heard a gunshot. When he looked up, he saw the white Lumina speeding away. Rafferty had been shot. Witts helped him into the passenger's seat, found the car keys, which Austin had taken but then threw away, and drove through the neighborhood until he saw a mailman and asked for help. The mailman called 911.

Austin's version of the incident was somewhat different, downplaying his own role but still casting blame for the actual shooting on [petitioner]. According to Austin's testimony, on July 22, 2006, he drove to Delaware with [petitioner] to buy two ounces of "high quality" marijuana from Rafferty for $500. [Petitioner] was supposed to chip in some of the purchase price.

When they arrived and parked, Austin walked over to Rafferty's Range Rover and got in the rear seat. He then called [petitioner] on his cell phone and told him to come over and add his money to the deal. [Petitioner] did so, climbing into the rear seat behind Witts. Rafferty and Austin then went to the rear of the vehicle to retrieve the marijuana and consummate the deal.

Rafferty opened the back hatch of the Range Rover. He and Austin simultaneously saw that [petitioner] was holding a gun to Witts' head. Rafferty reached into the bag containing the marijuana and pulled out his own pistol. Austin grabbed Rafferty and they struggled. Austin pushed Rafferty to the ground and ran back to his car. He saw [petitioner] get out of the Range Rover and shoot Rafferty in the chest. He and [petitioner] then fled back to Philadelphia. [Petitioner] showed Austin the proceeds of the robbery: marijuana, cell phones and necklaces.

New Castle County Police Officer Eric Biehl ("Officer Biehl") was the first to respond to the mailman's 911 call. He found Witts standing outside the Range Rover and Rafferty seated inside, "bleeding and not looking too well." As paramedics worked on Rafferty, Officer Biehl questioned him, "to just keep talking to him, keep him conscious, keep him thinking." Officer Biehl asked, "Who did this to you? Who are the suspects?" Rafferty replied, "Timothy Austin."

[Petitioner] was apprehended in May 2008, nearly two years after the murder. He agreed to make a statement to police. Although he initially denied any role in the incident, he eventually admitted, not only that he was involved, but that he fired the shot that killed Rafferty. According to [petitioner], he and Austin planned

2

> to rob Rafferty from the beginning. [Petitioner's] videotaped statement was played to the jury.

*Robinson v. State*, 3 A.3d 257, 258-59 (Del. 2010).

Petitioner was arrested in June 2008, and was subsequently indicted for first degree murder, three counts of possession of a firearm during the commission of a felony ("PFDCF"), two counts of first degree robbery, and second degree conspiracy. (D.I. 15 at 1) In April 2009, a Delaware Superior Court jury convicted petitioner of all charges except for the second degree conspiracy charge. The Superior Court sentenced petitioner to life in prison for the first degree murder conviction, and to a total of seventeen years in prison for the three PFDCF convictions and the two first degree robbery convictions.[2] *Id.* The Delaware Supreme Court affirmed petitioner's convictions and sentences on August 16, 2010. *See Robinson*, 3 A.3d at 264.

In May 2011, petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 15 at 2) The Superior Court denied the motion after determining that the claims were either barred or without merit. *See State v. Robinson*, 2012 WL 1415645 (Del. Super. Jan. 31, 2012). The Delaware Supreme Court affirmed the Superior Court's judgment on post-conviction appeal. *See Robinson v. State,* 2012 WL 4162948 (Del. Sept. 19, 2012).

Petitioner timely filed a § 2254 application in this court. (D.I. 1) The State filed an answer in opposition (D.I. 15), asserting that the claims should be denied as procedurally barred and/or meritless.

---

[2]On November 17, 2008, Austin, petitioner's codefendant, pled guilty to manslaughter, first degree robbery, and PFDCF, in exchange for agreeing to testify against petitioner during his April 2009 trial. *See Robinson v. State*, 2012 WL 1415645, at *1 (Del. Super. Jan. 31, 2012).

3

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). One prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider it on the merits. *See Duncan v. Henry,* 513 U.S. 364, 365 (1995); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman,* 501 U.S. at 750; *Harris v. Reed,* 489 U.S. 255, 260-64 (1989).

4

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - -whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

5

## B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011).

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1);

*Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

Petitioner raises three grounds for relief in his application: (1) defense counsel provided ineffective assistance by failing to move to suppress his recorded police statement on the basis that it was obtained in violation of his Fifth Amendment rights; (2) defense counsel provided ineffective assistance by failing to investigate and request *Brady* material; and (3) the trial judge and the State engaged in misconduct by having contact with the jury outside defense counsel's presence, which resulted in plain error.

### A. Claims One and Two: Ineffective Assistance of Counsel

The Delaware Supreme Court denied claims one and two as meritless. Therefore, habeas relief will only be available if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong,

7

a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the court notes that the Delaware Supreme Court correctly identified the *Strickland* standard applicable to claims one and two. Thus, the Delaware Supreme Court's decision was not contrary to *Strickland*. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of petitioner's case. When performing this inquiry, the court must review the Delaware Supreme Court's decision with respect to petitioner's ineffective assistance of counsel claims through a "doubly deferential" lens.[3] *Richter*, 562 U.S. at 105. Notably, when

---

[3] As explained by the *Richter* Court,
> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal

§ 2254(d) applies, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

### 1. Claim one: counsel did not file a suppression motion

In claim one, petitioner contends that defense counsel should have filed a motion to suppress his recorded police statement on the basis that it was obtained in violation of his Fifth Amendment rights, which the court construes as asserting that petitioner's statement was obtained in violation of his *Miranda* rights. Petitioner raised the same argument in his Rule 61 motion, and the Superior Court denied it as meritless after concluding that "it is evident from the record that any suppression motion would have been futile because [petitioner's] statement to the police was freely given." *Robinson*, 2012 WL 1415645, at *2. The Delaware Supreme Court affirmed that decision.

Pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), statements made by a defendant during a custodial interrogation must be suppressed unless the defendant was provided certain warnings and voluntarily, knowingly, and intelligently waived his or

---

habeas courts must guard against the danger of equating unreasonableness
under *Strickland* with unreasonableness under § 2254(d).
*Richter*, 562 U.S. at 105 (internal citations omitted).

9

her right to have an attorney present during the interrogation. *Id.* at 475. A valid

*Miranda* waiver has two distinct components:

> First, the relinquishment of the right must be voluntary in the sense that it was the product of a free and deliberate choice rather than the result of intimidation, coercion, or deception. Second, the waiver must be made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension, may a court properly conclude that *Miranda* rights have been waived.

*Moran v. Turbine*, 475 U.S. 412, 421 (1986).

In turn, "[t]he use of coerced confessions, whether true or false, is forbidden because the method used to extract them offends constitutional principles." *Lego v. Twomey*, 404 U.S. 477, 482-85 (1972). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). A statement is coerced, or involuntary, if the suspect's "will was overborne in such a way as to render his confession the product of coercion." *Arizona v. Fulminante*, 499 U.S. 279, 288 (1991). When determining if a statement was freely and voluntarily, courts must consider the totality of the circumstances, which includes both the characteristics of the person providing the statement and the details of the interrogation. *Id.* at 285-88. The surrounding circumstances can also include "the length of the interrogation, its location, its continuity, [and] the defendant's maturity, education, physical condition, and mental health." *See Connelly*, 479 U.S. at 167.

In this proceeding, petitioner does not describe how his confession was obtained in violation of his Fifth Amendment/*Miranda* rights. Without anything more to go on than

10

petitioner's bare-boned allegation, the court has no reason to doubt that the Delaware Supreme Court reasonably applied *Strickland* in concluding that defense counsel provided effective assistance.

Moreover, the record that has been provided belies petitioner's assertion.[4] For instance, in his Rule 61 affidavit, defense counsel explained that he did not file a motion to suppress petitioner's statement because he determined that it was "freely given and not susceptible to any suppression motions" after listening to petitioner's taped statement, which contained the *Miranda* warnings that were provided to petitioner. (D.I. 14, Appellant's App. to Op. Brief in *Robinson v. State*, No. 85, 2012, Exh. B, Ground I, at B14) Defense counsel also explained that he played petitioner's recorded police statement to petitioner over a laptop computer, and that he discussed the contents of the statement with petitioner. (D.I. 14, Appellant's App. to Op. Brief in *Robinson v. State*, No. 85, 2012, Exh. B, Ground IV, at B16)

Additionally, in its answer to petitioner's Rule 61 motion, the State explained that:

> [P]etitioner also asserts he never received the form he signed concerning *Miranda* rights. Within [petitioner's] appendix, he has provided an interview taken May 19, 2008. On page 3 of that interview [petitioner] is apprised of his *Miranda* rights. There is a follow up question in which he is asked to initial a form to indicate waiving his *Miranda* rights. He does so, and the interview continues for quite a bit.

(D.I. 14, Appellant's App. to Op. Brief in *Robinson v. State*, No. 85,2012, Section Three, Answer to Motion for Post-Conviction Relief, at 9) The court considers the State's detailed description of petitioner's waiver of his *Miranda* rights to be more credible than petitioner's conclusory and unsubstantiated assertion of a *Miranda* violation.

---

[4]Unfortunately, the record does not contain a transcript of petitioner's taped confession.

11

Finally, the Superior Court, which had the benefit of reviewing petitioner's recorded police statement, held that petitioner's statement was freely given and was not the product of police misconduct, trickery, or coercion. See Robinson, 2012 WL 1415645, at *3-*4. When viewed under the totality of circumstances analysis, the record belies petitioner's bald assertion that his statement was obtained in violation of his Fifth Amendment/*Miranda* rights.

Given the foregoing, petitioner cannot satisfy either prong of the *Strickland* standard. First, because nothing in the record indicates that petitioner's confession was obtained in violation of *Miranda*, defense counsel's decision not to file a futile motion to suppress petitioner's police statement did not fall below an objective standard of reasonableness. See *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Second, in light of the evidence that was admitted during the trial, petitioner cannot demonstrate a reasonable probability that the outcome of his proceeding would have been different but for counsel's failure to file a suppression motion. For instance, during petitioner's trial, Witts testified that he did not see Austin with a gun, that petitioner was the person who put a gun to his head and robbed him, and that he heard the gun shot that killed Rafferty only after petitioner exited the car. Austin also testified that petitioner shot Rafferty. Viewing the Delaware Supreme Court's denial of the instant ineffective assistance of counsel claim decision through the doubly deferential lens applicable on habeas review, the court cannot conclude that the Delaware Supreme Court unreasonably applied *Strickland* in holding that defense counsel's failure to file a suppression motion did not amount to ineffective assistance.

### 2. Claim two: counsel failed to discover the true identity of a witness and therefore did not subpoena him to testify

Next, petitioner asserts that defense counsel failed to prepare and investigate the State's case in a timely manner by failing to request "*Brady* material" that was both material and relevant. This contention involves police reports that defense counsel received prior to trial, which contained redacted names of certain witnesses. One of the interviews included in the report was with a witness whose name, Griffin, had been redacted. In this interview, Griffin stated that he overheard a phone conversation between Rafferty, the victim who was killed, and Austin, petitioner's co-defendant, in which Austin threatened Rafferty. Given the manner in which the names were redacted, defense counsel initially believed that Witts was the person who provided this information to the police, but learned during the trial that Griffin was the person who provided the information. Although petitioner phrases his complaint in terms of "*Brady* material," his true contention appears to be that trial counsel provided ineffective assistance by failing to learn prior to trial that Griffin, not Witts, was the individual who told police he overheard Robinson's co-defendant threaten Austin over the phone which, in turn, prevented him from subpoenaing Griffin to testify.

The Superior Court denied this argument as meritless after determining that defense counsel made a strategic decision not to call Griffin as a witness, and that petitioner was not prejudiced by that decision, explaining that,

> [s]ince the name of the individual who related the contents of this phone call to the police was redacted, there was some initial confusion by counsel as to the witness' identity. But during the trial, the witness' name was disclosed sufficiently in advance to allow him to be subpoenaed. However, counsel made a strategic decision not to subpoena him since the witness was not present during the shooting and the jury was already aware of the animosity between Rafferty and Austin. As stated by the [Delaware] Supreme Court [in petitioner's direct appeal],

13

this strategic decision was 'understandable' in light of the evidence presented at trial. Defense counsel's strategic decision not to compel a witness to testify is not generally disturbed and, here, clearly does not reflect a violation of the high standard for ineffective assistance of counsel under *Strickland*. [Petitioner] cannot show that his counsel's failure to compel testimony from this witness prejudiced him. Moreover, given the limited value of this witness's likely testimony, a strategic decision not to call this witness was within the wide range of counsel's professional judgment.

*Robinson*, 2012 WL 1415645, at *2. The Delaware Supreme Court affirmed the Superior Court's decision.

After viewing claim two in context with the record, the court concludes that petitioner has not demonstrated a reasonable probability that the outcome of his criminal proceeding would have been different but for counsel's failure to call Griffin as a defense witness. First, because Griffin did not witness Rafferty's shooting, he could not identify the shooter. Second, petitioner's recorded confession that he shot Rafferty was admitted as evidence during the trial, and Austin also testified that petitioner shot Rafferty. Finally, any testimony Griffin could have provided about Austin's alleged phone threat to Rafferty would have been cumulative, because other witnesses (William Witts and Heather Reed) testified about the animosity that existed between Austin and Rafferty.[5] Accordingly, viewing the Delaware Supreme Court's decision through the doubly deferential lens applicable on habeas review, the court concludes that the

---

[5]William Witts, who was Rafferty's roommate and in the car when Rafferty was shot, testified about a physical fight that Austin instigated with Rafferty during the drug sale that was going on just before Rafferty was shot (D.I. 14, App. to Appellant's Op. Br. in *Robinson v. State*, C.A. No. 507, 2009, at A-37 to A-56) Heather, who had a child with Austin when she was a teenager and then became involved in a long-term relationship with Rafferty, testified about the animosity Austin exhibited toward Rafferty on numerous occasions. (D.I. 14, App. to Appellant's Op. Br. in *Robinson v. State*, C.A. No. 507, 2009, at A-104 to A-114) She stated that there was "thick" tension between Rafferty and Austin due to disagreements over Austin's visitation rights and his failure to pay child support. *Id.* at A-107.

14

Delaware Supreme Court reasonably applied *Strickland* in denying petitioner's argument that counsel should have learned Griffin's identity and have subpoenaed him to testify.

### B. Claim Three: Ex Parte Communication

In claim three, petitioner contends that the trial judge and the State had improper contact with the jury outside the presence of petitioner or defense counsel. During petitioner's Rule 61 proceedings, the Delaware State Courts denied this claim as procedurally barred by Rule 61(i)(3) because it was not presented to the Delaware Supreme Court on direct appeal.

By applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984), that its decision rested on state law grounds. This court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Consequently, the court cannot review the merits of claim three absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

To the extent petitioner attempts to establish cause by blaming counsel for not raising this issue on direct appeal, it is unavailing. An attorney's ineffective assistance may constitute cause for a procedural default only if the attorney's ineffectiveness amounts to a Sixth Amendment violation. *See Murray*, 477 U.S. at 488. In this case, defense counsel's failure to raise the issue of the State and trial judge's alleged ex parte

15

communication with the jury did not amount to ineffective assistance because, as implicitly determined by the Delaware State Courts during petitioner's Rule 61 proceedings, no ex parte communication occurred.[6] The court accepts as correct the Superior Court's implicit factual finding that no ex parte communication occurred, because petitioner has not provided any clear and convincing evidence to rebut that finding. Thus, defense counsel's failure to raise a nonexistent and/or factually baseless argument did not constitute ineffective assistance.

In the absence of cause, the court will not address the issue of prejudice. Additionally, given petitioner's failure to provide new reliable evidence of his actual innocence, petitioner's procedural default cannot be excused under AEDPA's miscarriage of justice exception. Accordingly, the court will deny claim three as procedurally barred from federal habeas review.

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28

---

[6]Although the Superior Court denied the instant ex parte communication claim as procedurally barred, it made the following factual findings in reaching its decision: (1) evidence admitted at trial was played in the courtroom to the jury during its deliberations due to malfunctioning equipment in the jury room; (2) no new evidence was presented to the jury at that time; (3) there was no discussion with the jury; and (4) defense counsel was present for the display of the evidence. *See Robinson*, 2012 WL 1415645, at *5. "The purpose of the prohibition against ex parte communications is to prevent the judge from improperly influencing the jury." *Thomas v. Hodge*, 2013 WL 6797413, at *14 (N.D. Ill. Dec. 23, 2013). As such, once the jury has begun to deliberate, counsel must be given the opportunity to be heard before the trial judge responds to any juror inquiry. *See Rogers v. United States*, 422 U.S. 35 (1975). However, in this case, there was no prohibited ex parte communication, because there was no discussion between the jury, the judge, and the State, and counsel was present in the courtroom when the previously admitted evidence was played for the jury.

U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For the foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254. An appropriate order will be entered.